UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eco Water Systems LLC,                    Civil No.: 06-3105 (DSD/JJG)

        Plaintiff,
                                          **REPORT AND**
v.                                        **RECOMMENDATION**

KRIS, Inc.,

        Defendant.

---

JEANNE J. GRAHAM, United States Magistrate Judge

    The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on February 6, 2007, on Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. No. 9) and Defendant's Motion for Stay and Order Compelling Arbitration (Doc. No. 15). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I.    INTRODUCTION**

    This action arises out of an Authorized Dealer Agreement executed by Plaintiff Eco Water Systems, LLC ("Eco") and Defendant KRIS, Inc. ("KRIS"). Eco brings this action against KRIS for trademark infringement under both statutory and common law, violations of Minnesota's fair trade laws, breach of contact, unjust enrichment and unfair competition. Eco seeks injunctive relief, money damages and a disgorgement of profits. KRIS answered the Complaint denying Eco's allegations and brought Counterclaims against Eco for violations of the Delaware Franchise Security Law, or alternatively Minnesota Statute section 80C.01, *et seq*., breach of contract and unjust enrichment. Eco has moved to dismiss KRIS's statutory claims.

KRIS seeks an order staying the injunctive claims and compelling the parties to arbitration on all other claims pursuant to the arbitration agreement in the parties' agreement.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Eco is a Delaware limited liability company with its principle place of business in Woodbury, Minnesota. Eco is engaged in the business of designing, manufacturing, selling, leasing, renting and servicing water conditioners and drinking water equipment and related products under various trademarks, trade names, service marks, logos, designs, and commercial symbols incorporating the EcoWater name (collectively "the Marks"). The parties' business relationship spans approximately seventeen years, during which KRIS has marketed and sold water purification systems manufactured by Eco. KRIS conducts its business in Kansas as "Eco Water Systems of Central Kansas." On April 29, 2003, Eco and KRIS entered into an updated Dealer Agreement (the "Agreement"). According to the Agreement, KRIS has the exclusive right to advertise, market, distribute, sell, lease, rent and service EcoWater products within an exclusive area in the state of Kansas. The Agreement also gives KRIS the right to use Eco's trademarks and service marks, but only for so long as KRIS fully performs and complies with the terms of the Agreement.

On June 7, 2006, Eco notified KRIS by letter that pursuant to the express terms of the Agreement, Eco was terminating the Agreement immediately claiming KRIS had engaged in unethical conduct that may impair the goodwill of the Marks or the EcoWater name. In the termination letter, Eco advised KRIS that is was required to comply with all of the post-termination obligations set forth in the Agreement, including all of the post-termination obligations set forth in Article 10. Article 10 specifically requires that KRIS (a) immediately

cease using the Marks; (b) immediately remove the EcoWater name and the Marks from the Authorized Location, Dealer Vehicles, and all written materials used in Dealer business and uniforms; and (c) within two days of termination, notify the telephone company and directories by certified mail directing them to delete all references to EcoWater for telephone numbers assigned to or used by Dealer.

Article 10 of the Agreement also provides:

Notwithstanding any provision of this Agreement to the contrary, [KRIS] agrees that its failure to comply with its post-term obligations will cause [Eco] to suffer irreparable injury. Accordingly, [Eco] will have the right to petition a court of competent jurisdiction for the entry of temporary or permanent injunctions and orders of specific performance enforcing the provisions of this Article 10 without posting bond.

The Agreement also contains an arbitration clause, which states:

**15.1. Arbitration:** Except as qualified below, any dispute between Dealer and EWS [Eco] or any of EWS's or Dealer's affiliates arising under, out of, in connection with or in relation to this Agreement, the parties' relationship, or the business must be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be arbitrated in accordance with the then-current rules and procedures and under the auspices of the American Arbitration Association. The arbitration must take place in Minneapolis, Minnesota, or at such other place as may be mutually agreeable to the parties. The decision of the arbitrators will be final and binding on all parties to the dispute; however, the arbitrators may not under any circumstances: (1) stay the effectiveness of any pending termination of this Agreement; (ii) assess punitive or exemplary damages; or (iii) make any award which extends, modifies or suspends any lawful term of this Agreement or any reasonable standard of business performance that EWS sets. A judgment may be entered upon the arbitration award by any state or federal court in Minnesota or the state of the Exclusive Area.

Eco filed this lawsuit on July 26, 2006, alleging KRIS failed to comply with its post-termination obligations after Eco terminated the Agreement. On October 16, 2006, KRIS filed its Answer denying Eco's allegations and asserting its counterclaims against Eco.

### III.     DISCUSSION

#### A.     Defendant's Motion to Stay and for an Order Compelling Arbitration

Through the Federal Arbitration Act ("FAA"), Congress has established a strong federal policy in favor of arbitration. *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987); *see also Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 695 (8th Cir.1994). In a motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.,* 377 F.3d 868 (8th Cir.2004); *Houlihan,* 31 F.3d at 694-95. The question of scope goes to whether the parties have agreed to arbitrate a particular claim, but not to the potential merits of that claim. *Medcam, Inc. v.. MCNC*, 414 F.3d 972, 975 (8th Cir.2005). "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Id.* (citations omitted). An order to compel arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir.2001)). However, parties cannot be forced to submit to arbitration a dispute that the parties have not agreed to submit, because "arbitration is a matter of consent, not of coercion." *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir.1999) (citations omitted).

In this case, neither party challenges the application of the FAA to arbitration occurring pursuant to the Agreement nor the validity of the arbitration provision found in Article 15.1 of the Agreement. The parties are also in agreement that Eco's claims for injunctive relief are

excluded from the mandatory arbitration provisions of Article 15.1 by the terms of Article 10. The dispute between the parties, and the question that the Court must answer, is whether a stay of the proceedings addressing Eco's injunctive relief claims is warranted to allow the parties to pursue arbitration of the arbitrable claims in this action, or whether the nonarbitrable claims predominate Eco's claims such that this Court should decide all of the issues raised by the parties in the Complaint and Counterclaims. Defendant KRIS argues the provisions of the Agreement dictate mandatory arbitration for all of the issues in this action except Eco's requests for injunctive relief, and that a stay must be issued by this Court on the nonarbitrable claims pending arbitration. Eco opposes both arbitration and a stay in this case.

Relying upon *Peabody Coalsales Co. v. Tampa Electric Co.*, 36 F.3d. 46 (8th Cir 1994), Eco first contends the district court can grant its request for injunctive relief despite the presence of arbitrable issues because the language of Article 10 automatically entitles Eco to the injunctive relief it seeks. In *Peabody*, the Eighth Circuit found it permissible for the district court to grant injunctive relief in a case involving the FAA, but only when the contract terms contemplate such relief and it can be granted without addressing the merits of the arbitrable dispute. *Id*. at 47 n.3. The court described such terms as "qualifying language." *Id*. The terms of the contract in *Peabody* provided that performance of obligations under it "shall be continued in full by the parties during the dispute resolution process." The Eighth Circuit concluded this language clearly required continued performance during arbitration and entitled the movant to an injunction. *Id.* at 47-48. Eco asserts the Agreement in this case is like the agreement in *Peabody* in that it contains "qualifying language" that provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute.

The Court first notes that Eco fails to specifically identify the language in the Agreement that it purports is "qualifying language" that automatically entitles Eco to injunctive relief upon KRIS's failure to comply with its post-termination obligations. However, careful examination of the Agreement between Eco and KRIS reveals that the relevant clause of Article 10 does not contain qualifying language that provides this Court with clear grounds to grant relief without addressing the merits of the underlying dispute. Article 10 only provides that Eco is deemed "irreparably harmed" by KRIS's failure to comply with its post-termination obligations and that Eco has "the right to petition a court of competent jurisdiction for the entry of temporary or permanent injunctions to enforce such compliance." This language is not similar to the language of the agreement in *Peabody*. It is, however, similar to the language in *Manion v. Nagin*, where the Eighth Circuit Court of Appeals affirmed the district court's denial of injunctive relief in a case that involved arbitrable disputes. 255 F.3d 535 (8th Cir. 2001).

In *Manion,* the lower court denied injunctive relief sought under an employment agreement between a buying cooperative of independent retail marine dealers and the cooperative's terminated executive director. *Id*. at 539. The employment agreement contained an arbitration clause, as well as a provision permitting either party to "request interim judicial relief directly from the court ... without prior authorization from the arbitrator." *Id*. at 537. The agreement also indicated that a party would be "entitled to injunctive relief in case of any breach." *Id*. Manion had sought injunctive relief from the district court for reinstatement of salary and benefits pending the outcome of parallel arbitration proceedings that would determine whether the cooperative had valid cause to terminate him; the cooperative had filed a motion to

compel arbitration. *Id*. at 537-38. The district court granted the motion to compel arbitration and stayed the action pending the completion of arbitration. *Id*. at 538.

In affirming the district court's denial of injunctive relief, the Eighth Circuit found the language in the employment agreement allowing the parties to "request interim relief" and "injunctive relief in case of any breach" insufficient qualifying contractual language. The Eighth Circuit determined the language did not support plaintiff's attempt to effectively bypass the parties' agreement to arbitrate by requesting injunctive relief from the district court. *Id.* at 538-39. Specifically, the Eighth Circuit stated:

> It is true that the Agreement contemplates the possibility of interim judicial relief in the event of a dispute between the parties. It does not provide that a party is automatically entitled to injunctive relief, however, but only that a party may request such relief. Unlike the *Peabody* contract, it does not specify that the parties' "respective obligations … shall be continued in full by the parties during the dispute resolution process." The provision allowing a party to request interim relief has been fulfilled since Manion filed a motion for a preliminary injunction and it was ruled on by the district court. Another provision in the Agreement states that a party is entitled to injunctive relief "in case of any breach," but in order to issue such relief the district court would have been required to determine that a breach had occurred and to have made a determination on the merits of the underlying dispute, an issue for the arbitrator.

*Id.* at 539 (internal citations omitted). Thus, the *Manion* decision reiterated the *Peabody* principle that "qualifying contractual language" is "language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute." *Id.* (quoting *Peabody,* 36 F.3d at 47 n. 3.).

The Court finds the language of Article 10 of the Agreement between Eco and KRIS does not contain such "qualifying language" because it does not provide this Court with clear grounds to grant relief without addressing the merits of the underlying dispute. Instead, the Court's inquiry in deciding whether to award injunctive relief goes beyond a determination of irreparable

harm. In response to a request for injunctive relief, the court must conduct an inquiry under the four factors test set forth in *Dataphase* in order to determine whether injunctive relief is warranted, including likelihood of success on the merits. *See Dataphase*, 640 F.2d 109, 113 (8th Cir. 1981) (identifying four factors in examining whether preliminary injunctive relief is warranted as (1) irreparable harm; (2) balance of harms; (3) likelihood of success on the merits; and (4) public interest).

To determine the likelihood of success on the merits, questions regarding the validity of Eco's termination of the Agreement and the extent of KRIS's failure to comply with its post-termination obligations must be examined. Consequently, injunctive relief concerning the post-termination obligations of KRIS cannot be ordered without the Court entangling itself in the merits of the claims of the parties regarding the validity of the termination and the related conduct of the parties. These are arbitrable issues and such inquiry by the Court would be incompatible with the parties' arbitration agreement set forth in Article 15.1. The Court finds the language of the Agreement in this case is like the language in *Manion*, and like the Court in *Manion*, the Court in this case should not allowed the plaintiffs to bypass arbitration, even temporarily, by seeking to obtain injunctive relief from the district court.

Moreover, where parties have agreed that some, but not all, of the conflicts between parties are subject to arbitration, a stay of the nonarbitrable issues "is appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Simitar Entertainment, Inc v. Silva Entertainment, Inc*, 44 F.Supp.2d 986, 997 (D.Minn 1999). The Court finds both of these conditions are met in this case.

First, the arbitrable disputes in this action are significant in number.  The validity of Eco's termination and the triggering of KRIS's post-termination obligations are at the core of the Eco's allegations of KRIS's trademark violations.  Answering the question of whether and to what extent KRIS has failed to comply with its post-termination obligations, in the event the termination was lawful, is central to a finding on the merits of Eco's claims for damages and injunctive relief.  These are arbitrable issues that must, pursuant to the arbitration provisions of the Agreement, be determined by an arbitrator as they arise under and are related to the parties relationship under the Agreement.  Moreover, KRIS's counterclaims seek recovery for Eco's alleged breach of Delaware or Minnesota franchise laws, as well as remedies for breach of contract and unjust enrichment.  These are also arbitrable claims, and the Court concludes their presence at the center of the disputes in this case predominate over Eco's prayer for injunctive relief to enforce KRIS's compliance with the post-termination obligations set forth in Article 10.

In addition, the Court finds the arbitrator's decision regarding the validity of Eco's termination of the Agreement and the sufficiency of KRIS's conduct in response thereto, will significantly impact this Court's consideration of the injunctive issues that remain before the district court for resolution.  Indeed, the scope of KRIS's post-termination obligations and any requests for injunctive relief by Eco to enforce compliance with post-termination obligations is wholly dependent upon the outcome of arbitration.

Finally, the Court rejects Eco's assertions that the express terms of the arbitration provision of the Agreement restricts the arbitrator's authority to "interpretations and applications of the contractual provisions."  The scope of the arbitrator's authority under Article 15.1 is restricted only in the following three ways:  "the arbitrators may not under any circumstances:

9

(1) stay the effectiveness of any pending termination of this Agreement; (ii) assess punitive or exemplary damages; or (iii) make any award which extends, modifies or suspends any lawful term of this Agreement or any reasonable standard of business performance that EWS sets." This language is distinguishably broader than the language in the case of *Simitar Entertainment, Inc v. Silva Entertainment, Inc*, 44 F.Supp.2d 986 (D.Minn 1999), upon which the Plaintiff relies. In *Simitar*, the arbitration clause of the contract at issue expressly stated that the arbitrator "shall have the right only to interpret and apply the provisions of this Agreement … and may not change any such provisions." *Id*. at 989. Perhaps in its own realization of the dissimilarities between language contained in the agreements in *Simitar* and this case, Eco fails to specifically identify the restrictive language in the Agreement it claims expressly limits the arbitrator's authority to mere interpretation and application of the agreement. In light of all of these circumstances, the Court finds unpersuasive Eco's attempts to equate the language of the arbitrator's restriction in *Simitar* with the language of restriction in this case.

In sum, the Court finds the parties have agreed to arbitrate the claims that are at the heart of the dispute in this action, and the parties should be directed to arbitration on these issues. Because the arbitrable issues predominate over the nonarbitrable issues, and the outcome of the nonarbitrable issues largely depends upon the decisions of the arbitrator, the Court should issue a stay of the proceedings addressing the nonarbitrable injunctive claims pending arbitration.

**B.    Plaintiff's Motion for Partial Judgment on the Pleadings**

Eco filed a motion seeking partial judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(2). Eco asserts Count One and Count Four of KRIS's counterclaim fail to state a claim upon which relief can be granted. The claims allege Eco

breached the Delaware Franchise Security Law, or alternatively Minnesota Statute section 80C.01, *et seq*. Eco seeks dismissal of these Counts under Rule 12(h)(2) and 12(c).

At the February 6 hearing, counsel for the parties agreed that the Court should postpone consideration of Eco's motion until after the Court issued its ruling on KRIS's request regarding arbitration and a stay. The parties and the Court agreed that Eco's motion was well-briefed and could be decided on the papers by this Court or submitted to the arbitrator should the parties be directed to arbitration by the Court. Counts One and Four raise arbitrable issues. Pursuant to the arbitration provisions of the Agreement, Eco's arguments for dismissal are properly presented to the arbitrator. In light of the Court's recommendation that the parties be ordered to arbitration and that the proceedings on the remaining nonarbitrable issues be stayed pending the outcome of the arbitration, the Court concludes the issues in Eco's motion for partial judgment on the pleadings should be presented to the arbitrator. Accordingly, the Court recommends Eco's motion be denied without prejudice.

**IV.   RECOMMENDATION**

Based upon the foregoing, and having considered the parties' oral arguments, written submissions, and the entire file and record herein, the **IT IS HEREBY RECOMMENDED** that:

(1)   Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. No. 9) be **DENIED WITHOUT PREJUDICE**; and

(2)   Defendant's Motion for Stay and Order Compelling Arbitration (Doc. No. 15) be **GRANTED**.

Dated: April 12, 2007                              s/Jeanne J. Graham

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　JEANNE J. GRAHAM
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by May 2, 2007.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.